The People of the State of New York, Respondent, *v.* Eric C. Ressanen, Appellant.

Argued October 21, 1953; decided January 21, 1954.

*Henry W. Schober* for appellant. The proof negated any violation. (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *Gilsey Bldgs.* v. *Village of Great Neck Plaza,* 170 Misc. 945; *People* v. *Deth-*

*loff,* 283 N. Y. 309; *Mullins* v. *People,* 24 N. Y. 399; *Smith* v. *People,* 47 N. Y. 330; *People* v. *Ryan,* 274 N. Y. 149; *Matter of Terry,* 218 N. Y. 218; *Salsbury* v. *United Parcel Service,* 203 Misc. 1008; *Harnik* v. *Levine,* 202 Misc. 648.)

*T. Vincent Quinn, District Attorney* (*Benj. J. Jacobson* of counsel), for respondent. Defendant came within the statutory prohibition of double parking. (*Harnik* v. *Levine,* 202 Misc. 648.)

CONWAY, J. Defendant was charged with violating subdivision (o) of section 10 of article 2 of the Traffic Regulations of the City of New York in that " on May 6th, 1952 between 12:35 P.M. and M., the defendant * * * did park a vehicle * * * On the roadway side of a vehicle stopped or parked at the edge or curb of a street. (Double parking) ".

The facts are not in dispute. The police officer who issued the summons to defendant was the only one to testify. He stated that on May 6, 1952, at about 12:35 P.M. defendant " drove up and double parked [his Mack truck] in front of 132-06 Crossbay Boulevard." On the defendant's offer of proof the court found that the space available for defendant's truck alongside the curb, during the time defendant was engaged in unloading, was not sufficiently long for him to occupy, even though a space had been created by a vehicle which had been parked at the curb and had moved away while defendant was delivering his merchandise. It was conceded that the defendant had not received permission from the police officer to place his truck at an angle to the curb in the limited space available. The police officer testified, however, that defendant was, at the time he was given the summons, " unloading his truck " in the course of making a delivery and, further, that " traffic continued to move along the boulevard " while defendant's truck was in the position described by him. There was no charge here of traffic obstruction (N. Y. City Traffic Regulations, art. 9, § 121) and consequently we are not concerned with and do not consider that problem. The sole issue presented is whether, on the undisputed facts herein, defendant was properly convicted of violating subdivision (o) of section 10 of article 2 of the regulations which provides:

*" Article  2 — Parking*

" Section 10.  No  person  shall  park  a  vehicle:  \*  \*  \*
(o) On the roadway side of any vehicle stopped or parked at
the edge or curb of a street.  (Double parking.) "

In order to determine whether that article has been trans-
gressed it is necessary to ascertain what meaning has been
ascribed to the word " park " as it appears therein.  No
definition is to be found in article 2 itself.  However, para-
graph (a) of subdivision 17 of section 1 of article 1 — which
is entitled " Definitions " — declares:

" The following terms when used in these regulations unless
otherwise expressly stated, or unless the context or subject
matter otherwise requires, shall be deemed to mean and
include:  \*  \*  \*

" 17.  ' Park, parking, or parked' shall mean the stopping
or standing of a vehicle, whether occupied or not, except as
follows:  (a) When actually and expeditiously engaged in load-
ing or unloading merchandise ".

It is not questioned that defendant was actually and expedi-
tiously engaged in unloading merchandise.  Therefore, he was
without the operation of the regulation prohibiting double park-
ing unless it can be said that there has been demonstrated
an intent to confer upon the word " park " as used in sub-
division (o) of section 10 of article 2 a different meaning than
that given to it in paragraph (a) of subdivision 17 of section
1 of article 1 quoted above.

It has not been expressly declared that either the term
" park " or " parking " as used in subdivision (o) of section 10
of article 2 is to include a vehicle which is stopped or standing
even though actually and expeditiously engaged in loading or
unloading merchandise.  Does the context or subject matter
of subdivision (o) of section 10 of article 2 require us to con-
clude that it was so intended?  That is, does the word " double "
change entirely the meaning of the word " parking " which
it modifies?  We find nothing in subdivision (o) of section 10
of article 2 to justify such a conclusion.  Article 2 is entitled
simply " Parking ".  There is no reference to " Double Park-
ing " in the heading.  Section 10 thereof enumerates situa-
tions under which a person shall not *" park* a vehicle."

Subdivision (o), with which we are concerned, provides that "No person shall park a vehicle * * * On the roadway side of any vehicle stopped or parked at the edge or curb of a street." Following those words there appear in parentheses the words " Double parking." That is the only place in the article where that phrase is found. Certainly unless there is " parking " there cannot be " double parking ". It may well be that the single word " park " implies the setting at rest of a vehicle either parallel to or diagonally against the curb whereas " double park " is generally understood to refer to a vehicle set at rest alongside another standing vehicle. But, that does not change the fact that the word " parking " is contained within the phrase " double parking ". The regulation has been drawn to define in the clearest of terms the words " park ", " parked " and " parking " and excludes the vehicles of persons actually and expeditiously engaged in loading or unloading merchandise. It seems a matter of logic to say that if one's vehicle is not " parked ", as that term has been defined in the regulation, one's vehicle is not " double parked ". There is no question but that by the terms of article 1 of the Traffic Regulations defendant's vehicle was not " parked " and thus it was not " double parked ".

The District Attorney's fear that a holding that this defendant was not double parked will enable persons legally to triple park or even park in the center of the street and thereby effectively tie up all traffic is without substance since there is a Traffic Regulation prohibiting traffic obstruction (art. 9, § 121).

The judgments should be reversed, the information dismissed and the fine remitted.

Lewis, Ch. J. (dissenting). The single question presented by this appeal is whether the provision contained in Article 1, § 1, subd. 17(a) of the Traffic Regulations of the City of New York — which section defines the words " park, parking or parked " and expressly excludes from such definition a vehicle " when actually and expeditiously engaged in loading or unloading merchandise " — also excludes vehicles, so engaged, from the prohibition of Article 2, § 10(o) against " double parking." As those two provisions of the regulations — quoted in full in the majority opinion — are inconsistent, our problem is one of interpretation.

I find it difficult to agree with the view of the majority that the regulatory authorization, mentioned above, which grants to persons loading or unloading merchandise expeditiously the right to *park* where others may not park—viz., where signs prohibit parking in front of driveways, or within fifteen feet of a crosswalk or safety zone (see art. 2, § 10, subds. [e], [f], [g] and [i]), or for more than the alloted time (*id.* subds. [a], [b] and [c])—also serves to permit such person to "double park." While it is obvious that the word "park" is a component part of the phrase "double park", it is my view that the contextual use to which the word "double" is put in that phrase changes entirely the meaning of the word "park" which it modifies. Thus the clear implications attaching to the single word "park" do not apply to the phrase "double park." In its normal connotation, the single word "parked," as found in the context of each of the regulations with which we are here concerned, refers to a vehicle when at rest parallel to and close to the right curb (art. 2, § 10, subd. [d]). Different is the reference to a "double parked" car which is expressly stated to be a vehicle set at rest "*On the roadway side of any vehicle* stopped or parked at the edge or curb of a street" (art. 2, § 10, subd. [o]).

While Article 1, § 1, subd. 17(a) authorizes a vehicle, actually engaged in loading or unloading merchandise, to park (i.e. to be set at rest parallel or at an angle to the curb) in locations where, or at hours of the day when, other vehicles may not lawfully do so, it does not, in my opinion, authorize a vehicle to "double park" (i.e. to park, *not* next to the curb, but on the roadway side of another vehicle already parked).

It is suggested that if defendant's vehicle was double parked in such a position as to block traffic, then the operator could have been convicted of a violation of section 121 of article 9 of the regulations, which prohibits a vehicle from obstructing traffic. However, the present case furnishes precisely the answer to that suggestion: Defendant concededly was not, at the time he was served with summons, obstructing traffic and therefore was not violating section 121 of article 9.

The ban against double parking was obviously interposed as a measure to prevent obstruction of traffic, violation of that provision (*id.* art. 9, § 121) being in itself an offense. In

other words, when obstruction of traffic occurs, section 121 of article 9 is violated; likewise a car parked on the roadway side of any vehicle which is parked at the edge or curb of a street is in violation of the " double parking " ban (art. 2, § 10, subd. [o]). The two offenses are not necessarily merged, and defendant was properly convicted for violating the double parking ban.

Concluding, as I do, that the Traffic Regulations involved have received proper interpretation by the courts below, I dissent and would affirm the judgment under review.

FULD, FROESSEL and VAN VOORHIS, JJ., concur with CONWAY, J.; LEWIS, Ch. J., dissents in opinion in which DESMOND and DYE, JJ., concur.

Judgments reversed, etc.